UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CAROLYN J. McELROY,                    )          NO. EDCV 07-757 AGR
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )
                                       )          MEMORANDUM OPINION AND
MICHAEL J. ASTRUE,                     )          ORDER
Commissioner of Social Security,       )
                                       )
        Defendant.                     )
_____)

        Carolyn J. McElroy filed this action on June 21, 2007.  Pursuant to 28

U.S.C. § 636(c), the parties filed Consents to proceed before the Magistrate

Judge on July 5 and July 9, 2007.  On March 13, 2008, the parties filed a Joint

Stipulation ("JS") that addressed the disputed issues.  The Court has taken the

matter under submission without oral argument.

        Having reviewed the entire file, the Court affirms the Commissioner's

decision.

///

///

///

///

**I.**

## PROCEDURAL BACKGROUND

On June 8, 2004, McElroy filed an application for supplemental security income benefits. The application was denied initially and on reconsideration. A.R. 38-39. McElroy requested a hearing. A.R. 40. The Administrative Law Judge ("ALJ") conducted a hearing on October 24, 2006, at which McElroy, a medical expert, and a vocational expert testified. A.R. 230-248. On November 27, 2006, the ALJ issued a decision denying benefits. A.R. 9-17. On January 26, 2007, McElroy filed a request for review of the ALJ's decision. A.R. 7. On April 23, 2007, the Appeals Council denied the request for review. A.R. 4-6. This lawsuit followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///

///

2

**III.**

**DISCUSSION**

**A.    Definition of Disability**

"A person qualifies as disabled, and thereby eligible for such benefits, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and internal quotation marks omitted).

**B.    The ALJ's Findings**

The ALJ found that McElroy had the following severe impairments: "psychotic disorder, not otherwise specified, with history of polysubstance abuse and dependence in remission."  A.R. 13.  McElroy has the residual functional capacity to "perform basic mental work related activities except for any significant operation or being around hazardous machinery; constant public contact; any intensive interaction with any [] one on a consistent basis.  She can tolerate occasional performance evaluations by a supervisor."  *Id.*  The ALJ found that there are jobs that exist in significant numbers in the national economy that McElroy can perform. A.R. 16.

**C.    Plaintiff's Treating Physician**

McElroy first argues that the ALJ did not properly consider the opinion of her treating physicians, Dr. Payne and Dr. Compton.  An opinion of a treating physician is given more weight than the opinion of non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  When a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence.  *Id.* at 632.  When a treating physician's opinion is contradicted by another doctor, "the ALJ may not

3

1   reject this opinion without providing specific and legitimate reasons supported by

2   substantial evidence in the record.  This can be done by setting out a detailed

3   and thorough summary of the facts and conflicting clinical evidence, stating his

4   interpretation thereof, and making findings." *Id.* (citations and internal quotation

5   marks omitted).  "When there is conflicting medical evidence, the Secretary must

6   determine credibility and resolve the conflict."  *Thomas v. Barnhart,* 278 F.3d 947,

7   956-57 (9th Cir. 2002) (citation omitted).

8          A treating physician's opinion is given controlling weight if it is "'well-

9   supported by medically acceptable clinical and laboratory diagnostic techniques

10  and is not inconsistent with the other substantial evidence in [the] case record.'"

11  *Orn*, 495 F.3d at 631 (citation omitted).  If the treating physician's opinion does

12  not qualify for controlling weight, the opinion is evaluated in light of several

13  factors, including length of treatment, nature and extent of treatment relationship,

14  supportability, consistency with the record as a whole, specialization, and other

15  factors.  *Id.* at 631-32; 20 C.F.R. § 404.1527(d)(2)-(6).

16         Here, as the ALJ noted, the treating physician opinions are not based on

17  any testing.  A.R. 15; *Orn*, 495 F.3d at 631 (treating physician opinions that are

18  not supported by medically acceptable clinical and laboratory diagnostic

19  techniques are not given controlling weight).  In addition, the opinions of Dr.

20  Payne and Dr. Compton were contradicted by the examining psychiatrist, Dr.

21  Fontana, and the medical expert, Dr. Malancharubil.  The ALJ proceeded to

22  evaluate the relevant factors and set forth specific and legitimate reasons

23  supported by substantial evidence in the record.  The decision sets forth a

24  detailed summary of the facts, the conflicting medical source evidence, and the

25  ALJ's interpretation and findings.

26         The ALJ found that the forms were conclusory, there were gaps in

27  treatment, and the conclusions were inconsistent with the treatment notes.  A.R.

28  15-16.  The ALJ's findings are supported by substantial evidence.

4

1  On October 15, 2003, Dr. Compton completed a one-page report in which

2  he checked the box for "incapacitated from work." A.R. 142. Dr. Compton

3  diagnosed schizophrenia paranoid type, partially compensated, and opined that

4  McElroy had a fair prognosis with treatment. *Id.* Dr. Compton noted auditory

5  hallucinations, paranoid tendency, poor concentration, and mood instability. *Id.*

6  Dr. Compton described the incapacity as temporary and expected to release

7  McElroy from his care by March 2004. *Id.* However, prior to this report, Dr.

8  Compton treated McElroy once on November 19, 2002, and diagnosed psychosis

9  NOS (cannot rule out paranoid schizophrenia), alcohol abuse active, cannabis

10  abuse active, bulimia nervosa suspected. A.R. 182, 184. Subsequently, McElroy

11  became pregnant, did not take medications, and returned to Dr. Compton 11

12  months later on October 14, 2003, the day before the report. A.R. 169-176.

13  In February 2004, Dr. Compton again appears to have checked a box

14  indicating that McElroy was not able to work. A.R. 141. On February 2, 2004,

15  McElroy complained that her medication was not doing anything. A.R. 165, 167.

16  Dr. Compton increased her medication. A.R. 165. However, on March 3, 2004,[1]

17  Dr. Compton's treatment notes indicate that McElroy is "doing remarkably better."

18  A.R. 163. "It's nice we finally found a medication that works." *Id.* (quotations in

19  original). Dr. Compton's treatment notes on June 8, 2004, state that McElroy was

20  "[d]oing relatively well." A.R. 157. She reported "some nervousness, moderate

21  agoraphobia, but also some improvement." *Id.* "Has noticed some increase in

22  AH. Positive attitude, however; wishes to go to work at WalMart when her Tx is

23  stabilized. Cognitive function appears intact."[2] *Id.*

24

25  [1]  The first references to March 2005 and September 2005 dates in the
26  last paragraph on A.R. 14 in the ALJ's decision are typographical errors. The
   later references to 2005 in that same paragraph are accurate. A.R. 14.

27  [2]  McElroy argues that the ALJ ignored her GAF scores. JS 4.
   However, the ALJ considered the inconsistent GAF scores over time and
28  discounted them for the reasons discussed in the body of this Opinion. A.R. 15,

1    On November 3, 2004, Dr. Payne completed a one-page report.  A.R. 140,

2    148.  Dr. Payne checked the box for "incapacitated from work" and diagnosed

3    psychotic disorder NOS.  A.R. 140.  Dr. Payne noted auditory hallucinations and

4    impaired concentration.  *Id.*  As the ALJ noted, this form is not supported by Dr.

5    Payne's treatment notes.  A.R. 14.  Dr. Payne began treating McElroy on August

6    4, 2004.  A.R. 151.  Dr. Payne increased her medication to 30 mg.  *Id.*  When

7    McElroy returned on September 8, 2004, the treating notes indicate that she "no

8    longer hears voices, mood more stable, medication effective."  A.R. 150.  Dr.

9    Payne lowered her dosage to 25 mg.  *Id.*  When McElroy returned on October 6,

10   2004, she reported an increase in auditory hallucinations since taking the lowered

11   dosage.  A.R. 149.  Dr. Payne increased the dosage back to 30 mg.  *Id.*

12   On April 20, 2005, Dr. Payne checked a box indicating that McElroy had

13   physical or mental incapacity that prevents or substantially reduces his/her ability

14   to work full time at his/her customary job.  A.R. 226.  Again, the form is not

15   supported by treatment notes.  On January 5, 2005, McElroy reported that she

16   tried going off the medication but the auditory hallucinations returned in the

17   second week.  After restarting the medication, the auditory hallucinations

18   resolved.  A.R. 228.  On March 2, 2005, McElroy reported that the medication is

19   effective.  When she misses taking her medication, the auditory hallucinations

20   return.  A.R. 227.

21   On April 26, 2006, Dr. Payne checked a box indicating that McElroy was

22   unable to work.  A.R. 216.  The form is not supported by Dr. Payne's treatment

23   notes.  A.R. 15.  On October 12, 2005, Dr. Payne reported that McElroy had no

24   auditory hallucinations, mood stable, and sleep good.  A.R. 217.

25   ///

26

27   224; *see Morgan  v. Commissioner of the Social Security Administration*, 169
     F.3d 595, 598 (9th Cir. 1999) (affirming denial of benefits notwithstanding GAF
28   score of 45-55 during a period of time).

1  A treating physician's opinion may be rejected when it is conclusory or not

2  supported by the physician's own treatment records.  *Connett v. Barnhart*, 340

3  F.3d 871, 874-75 (9th Cir. 2003) (ALJ properly rejected treating physician's

4  "disability certificate" unsupported by treatment notes); *Batson v. Commissioner*

5  *of the Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ

6  properly rejected treating physician's conclusory check-list report); *Rollins v.*

7  *Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (treating physician's opinion of

8  disability may be discounted when physician's treatment notes do not support

9  that conclusion).

10  The ALJ relied upon the opinion of the examining psychiatrist, Dr. Fontana,

11  on March 15, 2005.  A.R. 15; *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.

12  1995) (opinion of examining physician based on independent clinical findings may

13  be substantial evidence).  Dr. Fontana diagnosed psychotic disorder NOS vs.

14  schizophrenia, paranoid type, continuous, cocaine abuse, in sustained full

15  remission, and cannabis abuse, in sustained full remission.  A.R. 208.  Dr.

16  Fontana noted that McElroy's affect was appropriate, her speech was normal,

17  and her thought processes were logical and goal-oriented.  A.R. 207.  He

18  concluded McElroy "should be able to perform simple and repetitive tasks, as well

19  as more detailed and complex tasks.  She should be able to accept instructions

20  from supervisors, and interact appropriately with coworkers and the public.  She

21  should be able to perform work activities on a consistent basis, without additional

22  supervision.  She should be able to maintain regular attendance in the workplace,

23  and complete a normal workday/workweek."  A.R. 208.

24  The ALJ also relied upon the opinion of the medical expert, Dr.

25  Malancharubil.  *Andrews*, 53 F.3d at 1041 (nonexamining physician's opinion

26  may serve as substantial evidence when it is supported by and consistent with

27  other medical evidence).  Dr. Malancharubil reviewed the medical records and

28  questioned McElroy at the hearing.  A.R. 237.  As the ALJ noted, Dr.

7

1  Malancharubil testified, with examples and citations to the record, that McElroy
2  did not present with the typical symptoms or behavior of paranoia or
3  schizophrenia.  A.R. 15, 241-43.  There is no objective evidence of paranoid
4  schizophrenia.  A.R. 15, 241, 245.  McElroy has reported auditory hallucinations
5  in the same way over four years, which is not typical of people who have chronic
6  hallucinations.  A.R. 15, 242-43.  Dr. Malancharubil noted that McElroy was not
7  distressed at the voices and was able to not pay attention to them.  A.R. 15, 239,
8  242-43.  The ALJ accepted the functional limitations set forth by the medical
9  expert.[3]  A.R. 13, 15, 243-46.

10  ### D.   Plaintiff's Subjective Complaints and Credibility

11  "To determine whether a claimant's testimony regarding subjective pain or
12  symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter*
13  *v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

14  At step one, "the ALJ must determine whether the claimant has presented
15  objective medical evidence of an underlying impairment 'which could reasonably
16  be expected to produce the pain or other symptoms alleged.'"  *Id.* (citations
17  omitted); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).  The
18  ALJ found that McElroy's medically determinable impairments could reasonably
19  be expected to produce the alleged symptoms.  A.R. 14.

20  "Second, if the claimant meets this first test, and there is no evidence of
21  malingering, 'the ALJ can reject the claimant's testimony about the severity of her
22  symptoms only by offering specific, clear and convincing reasons for doing so.'"
23  *Lingenfelter*, 504 F.3d at 1036 (citations omitted).  "In making a credibility
24  determination, the ALJ 'must specifically identify what testimony is credible and

25

26  [3]   McElroy points to the state agency medical consultant's report, but it,
27  too, did not find McElroy disabled: "Claimant is able to understand, remember,
   and carry out simple instructions, to respond appropriately to supervisors, co-
   workers and work situations, and to adjust to changes in a routine work setting on
28  a sustained basis.  Claimant is unable to work with the public."  A.R. 127.

1  what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464

2  F.3d 968, 972 (9th Cir. 2006) (citation omitted).

3          The ALJ found that the McElroy's allegations "are not entirely credible."

4  A.R. 14.  McElroy argues that the ALJ failed to identify the allegations he found

5  not credible.  JS at 12-13.  However, the ALJ identified McElroy's prehearing

6  statements that she could not work, shop, or socialize.  A.R. 14.

7          McElroy further argues that the ALJ did not consider the proper factors and

8  did not state clear and convincing reasons for rejecting her allegations.  JS at 13.

9  However, the ALJ set forth specific, clear and convincing reasons based on

10  appropriate factors and substantial evidence.  As the ALJ noted, McElroy testified

11  at the hearing that she applied for a job at Walmart and would have gone to work

12  if they had called her.  A.R. 14, 240.  McElroy testified that the medication helped

13  her symptoms.  A.R. 14, 150, 238.  As the ALJ also noted, McElroy testified at the

14  hearing that her physician lowered the medication to 20mg and "the voices are

15  coming back slightly."  However, if the voices tell her to do something bad, she

16  does not pay attention to them.  A.R. 14, 238-39.  The ALJ further noted

17  McElroy's statements that she works out, reads, performs basic household

18  chores and shops for short periods of time in public places.  A.R. 14, 72, 74-76.

19  The ALJ may properly consider inconsistencies in the claimant's statements and

20  inconsistencies between a claimant's statements and her daily activities.

21  *Thomas*, 278 F.3d at 959.  The ALJ also may consider whether the claimant's

22  impairments can be controlled with treatment.  *Warre v. Commissioner of the*

23  *Social Security Administration*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments

24  that can be controlled effectively with medication are not disabling for the purpose

25  of determining eligibility for SSI benefits.") (citation omitted).

26          McElroy further argues that the ALJ did not consider her friend's

27  statements.  JS 13.  However, the ALJ considered the friend's statements, and

28  found that they were not entirely credible as to the intensity, persistence and

1  limiting effects of the symptoms.  A.R. 14.  The ALJ noted alleged limitations in

2  understanding written instructions and interacting with others in public places.  On

3  the other hand, the ALJ noted that McElroy went to meetings at her children's

4  school, handled household chores adequately, and shopped in stores albeit only

5  once a month in the early morning.  A.R. 14, 80, 82-85, 119-21.[4]

6      "If the ALJ's credibility finding is supported by substantial evidence in the

7  record, we may not engage in second-guessing."  *Thomas*, 278 F.3d at 959

8  (citation omitted); *Morgan*, 169 F.3d at 600.

9                                          **IV.**

10                                       **ORDER**

11      IT IS HEREBY ORDERED that the decision of the Commissioner is

12  affirmed.

13      IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this

14  Order and the Judgment herein on all parties or their counsel.

15

16

17  DATED: May 23, 2008

18                              _____
                                ALICIA G. ROSENBERG
                                United States Magistrate Judge

19

20

21

22

23

24

25

26      [4]      The Court notes that the handwriting on the two statements are
27  markedly different even though they purport to be from the same person written
    five months apart.  *Compare* A.R. 80-88 *with* A.R. 117-124.  The handwriting in
28  A.R. 117-124 appears to be the same as McElroy's.  *Compare* A.R. 98 *with* A.R.
    119.